**CITY OF AKRON, Appellee,**

v.

**CARTER, Appellant.**

[Cite as *Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 25037 and 25038.

Decided Nov. 10, 2010.

Cheri B. Cunningham, Director of Law, Stephen A. Fallis, and Sean W. Vollman, Assistant Directors of Law, for appellee.

Sidney N. Freeman and Bradley S. LeBoeuf, for appellant.

DICKINSON, Presiding Judge.

## INTRODUCTION

{¶ 1} Following a court-ordered mediation conference in an appropriation proceeding, the mediator filed a report indicating that the parties had reached a settlement. The city of Akron later moved the trial court for a determination that the terms of a settlement agreement reached during mediation are not privileged under Ohio's Uniform Mediation Act, R.C. Chapter 2710. The landowner, Roger Carter, responded with a motion in limine to exclude all mediation communications under the privilege. The trial court determined that the terms of a settlement reached during a mediation conference are not privileged and granted the city leave to support its motion to enforce settlement with "any evidence of a contract of settlement, the terms of any settlement agreement, and whether such terms were agreed upon." In a separate entry filed the same day, the trial court sua sponte disqualified Carter's lawyers from continuing to represent him in the matter because the city intended to call them as witnesses. Carter appealed both entries. The trial court's judgments are reversed because

(1) the information the city sought is privileged and the trial court applied a statutory exception without making the requisite findings and (2) the trial court disqualified Carter's lawyers under Prof.Cond.R. 1.7 and 3.7 without considering whether their testimony would create a conflict of interest or whether they were necessary witnesses under Prof.Cond.R. 3.7.

## BACKGROUND

{¶ 2} The city of Akron sued Carter, seeking to appropriate two residential properties he owns near the University of Akron campus. The parties mediated the case on May 15, 2009. According to the mediator's report, filed shortly thereafter, the parties reached a "mutually agreeable settlement" at mediation and intended to enter an order to that effect within 30 days. In mid-August, the city notified the trial court that it intended to move the court to enforce a settlement agreement it said had been reached at mediation. In anticipation of that motion, the city moved the trial court to schedule an in camera hearing under R.C. 2710.05(B) in order to determine whether the terms of a settlement agreement allegedly reached at mediation are privileged communications under R.C. 2710.03.

{¶ 3} Carter responded with a motion in limine to exclude all evidence of "any * * * mediation settlement discussions" on the basis of privilege under R.C. 2710.01 et seq. Carter requested that all such evidence be excluded from both the in camera hearing and trial. The city opposed Carter's motion on the basis of R.C. 2710.05(B)(2), arguing that it intended to offer evidence only of the terms of the settlement agreement reached at mediation rather than the mediation discussions leading up to the agreement. The trial court held the requested in camera hearing to determine whether the target evidence was privileged under the Uniform Mediation Act. The record does not reflect what happened at the in camera hearing. Following the hearing, the trial court issued two orders.

{¶ 4} Although the trial court granted Carter's request to exclude evidence of all preliminary mediation discussions, it denied his request to exclude evidence of any oral settlement agreement. The trial court held that mediation communications regarding a contract arising out of a mediation are not covered by the privilege. R.C. 2710.05(B)(2). It ordered that the City of Akron may support [its] motion [to enforce settlement agreement] with any evidence of a contract of settlement, the terms of any settlement agreement, and whether such terms were agreed upon. On the same day, September 21, 2009, the trial court issued a separate entry sua sponte disqualifying Carter's two lawyers from further representing him in this matter because it found that they "will be called to testify at the [h]earing on the City of Akron's [m]otion to [e]nforce [s]ettlement." Carter eventually appealed both entries, but not before the city issued subpoenas

to Carter's lawyers, who both responded with affidavits containing the testimony Carter sought to exclude from the trial court's consideration. The city filed the lawyers' affidavits as evidence supporting its motion to enforce the settlement agreement the parties had allegedly reached during mediation.

{¶ 5} Carter filed separate notices of appeal from each of the two journal entries the trial court issued on September 21, 2009, and this court consolidated the appeals. Before the parties filed merit briefs, we questioned our jurisdiction regarding the appeal from the ruling on the motion in limine and ordered the parties to brief the issue of whether that entry is a final, appealable order. Before addressing the merits of Carter's first assignment of error, we must determine whether we have jurisdiction.

## JURISDICTION

{¶ 6} Carter has argued that the trial court's denial of his motion in limine is a final, appealable order under R.C. 2505.02(B)(1) and (B)(2). The city has argued that the order is not final and appealable because it is merely a tentative, preliminary ruling about an evidentiary issue. Unlike most privilege situations, neither of the parties' motions involved discovery requests to compel or protect information from disclosure to the opposition, and the trial court's ruling did not order any such disclosure. The motions dealt entirely with the admissibility of potentially privileged evidence.

{¶ 7} This court has described a motion in limine as "a precautionary request * * * to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury." *State v. Echard,* 9th Dist. No. 24643, 2009-Ohio-6616, 2009 WL 4830001, at ¶ 3, quoting *State v. Grubb* (1986), 28 Ohio St.3d 199, 201, 28 OBR 285, 503 N.E.2d 142. Due to the preliminary nature of the ruling, in order to preserve the issue for appeal, one must object at the point during trial when the issue arises. Id. at ¶ 4. In *Echard,* this court pointed out that the Ohio Supreme Court has "explained that renewing a motion and/or objection in the context of when [the evidence] is offered at trial is important because 'the trial court is certainly at liberty * * * to consider the admissibility of the disputed evidence in its actual context.'" Id. at ¶ 4, quoting *Grubb* at 202. This concept of preserving the issue for appeal applies, however, only if the motion in limine is of a type that requests a preliminary ruling prior to the issue being presented in context during trial. See, e.g., *Ford v. Gooden,* 9th Dist. No. 23779, 2007-Ohio-7043, 2007 WL 4554444, at ¶ 9, describing a motion in limine as a "preliminary ruling concerning an evidentiary issue that was anticipated but not yet presented in its full context," quoting *State v. Chandathany,* 9th Dist. No. 02CA0081–M, 2003-Ohio-1593, 2003 WL 1689591, at ¶ 5.

{¶ 8} Not all motions in limine are aimed at evidence that may later become relevant and admissible if and when a proper foundation has been laid at trial. Some evidence cannot ever become relevant and admissible. For instance, evidence that is subject to the mediation-communication privilege and is not covered by an exception is neither discoverable nor admissible at trial. R.C. 2710.03(A). R.C. 2710.05(B) provides that otherwise privileged mediation communications may be discoverable and admissible only if a trial court determines at an in camera hearing that the criteria set forth in that subsection apply. Whether evidence is privileged under the statute is not dependent on a foundation being laid at trial. Therefore, the ruling on this type of motion in limine is not preliminary. It is definitive.

{¶ 9} In this case, the city moved the court to determine before trial whether the exception codified at R.C. 2710.05(B)(2) applies to the terms of an oral settlement agreement reached at mediation. The city sought to admit testimony from Carter's lawyers on that topic in support of its motion to enforce settlement. In response, Carter moved the court to exclude all mediation communications as privileged under R.C. 2710.03. The trial court's ruling on the parties' competing motions was not preliminary, awaiting a foundation that might be laid at trial. By way of its ruling, the trial court determined that R.C. 2710.05(B)(2) applies to the terms of the settlement agreement allegedly reached at mediation so that the city was permitted to introduce such evidence in support of its motion to enforce the settlement agreement. Therefore, the entry Carter appealed is a ruling on a definitive motion in limine, that is, a final pretrial determination with respect to inadmissibility of a particular matter. *State v. Echard*, 9th Dist. No. 24643, 2009-Ohio-6616, 2009 WL 4830001, at ¶ 20 (Dickinson, J., dissenting). As a ruling on a definitive motion in limine, the order appealed must be analyzed for finality under R.C. 2505.02 just like any other interlocutory order.

{¶ 10} Under the Ohio Constitution, Ohio's courts of appeals "have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Section 3(B)(2), Article IV, Ohio Constitution. Certain interlocutory orders are final and appealable under R.C. 2505.02. See *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus. Under R.C. 2505.02(B)(1), "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment." Under R.C. 2505.02(B)(2), an order is a final order that may be reviewed if it is an order in a "special proceeding" and it "affects a substantial right."

■■ {¶ 11} An order in an appropriation proceeding instituted under R.C. Chapter 163 is an order in a special proceeding as defined by R.C. 2505.02. *Cincinnati Gas & Elec. Co. v. Pope* (1978), 54 Ohio St.2d 12, 16, 8 O.O.3d 7, 374 N.E.2d 406. Therefore, to satisfy the statute, the trial court's order in this case needed to affect a substantial right. R.C. 2505.02(B)(2). The statute defines "[s]ubstantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).

{¶ 12} Subject to certain limitations, R.C. 2710.03 confers a right of privilege on all parties, mediators, and nonparty participants in mediation to protect "mediation communications" from both discovery and admissibility. See R.C. 2710.02. Quoting R.C. 2710.05(B)(2), the trial court determined that no privilege applied "to any communication regarding 'a contract arising out of a mediation.' " The trial court's journal entry in this case affected Carter's statutory right to the privilege. Because the order appealed was issued in a special proceeding and affected Carter's substantial rights, it is a final, appealable order. See R.C. 2505.02(B)(2).

## MEDIATION COMMUNICATIONS: A PRIVILEGE

■ {¶ 13} Carter's first assignment of error is that the trial court incorrectly denied the part of his motion in limine that sought to invoke the statutory privilege covering mediation communications. He has argued that all mediation communications, including those regarding terms of any alleged settlement agreement, are covered by the statute and not subject to any exception. The city has argued that the trial court correctly determined that no privilege attaches to any communications regarding a contract arising from mediation. The bulk of the city's argument focused on the question of whether an oral settlement agreement is enforceable. But that is not the question before this court. The relevant question is whether the information the city sought to use is privileged under Ohio's codification of the Uniform Mediation Act. "[W]hether * * * information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo." *Med. Mut. of Ohio v. Schlotterer,* 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, at ¶ 13.

{¶ 14} R.C. 2710.03(A) provides that "a mediation communication is privileged * * * and is not subject to discovery or admissible in evidence * * * unless [the privilege is] waived or precluded as provided in section 2710.04 of the Revised Code." A " '[m]ediation communication' [is] a statement, whether oral, in a record, verbal or nonverbal, that occurs during a mediation or is made for purposes of * * * participating in * * * a mediation * * *." R.C. 2710.01(B). The statute provides a privilege for mediation parties, nonparty participants, and

mediators. R.C. 2710.03(B). According to the statute, the privilege may be waived only "if it is expressly waived by all mediation parties and by * * * [the] mediator [in regard to a mediation communication of the mediator] * * * [or] a nonparty participant [in regard to his mediation communication]." R.C. 2710.04(A).

{¶ 15} There is no dispute that the city sought to admit evidence of mediation communications in this case. See R.C. 2710.01(B). The parties disagree about whether the trial court was correct in determining that statements made during mediation that constitute a settlement agreement fall under an exception to the privilege against disclosure. Ohio's Uniform Mediation Act includes various exceptions to the general rule of nondisclosure. There is no privilege, for instance, for mediation communications that are "contained in a written agreement * * * signed by all parties." R.C. 2710.05(A)(1). There is also no privilege for mediation communications that are "sought or offered to prove or disprove a claim or complaint of professional misconduct or malpractice filed against the mediator," or communications sought in connection with felony criminal proceedings. R.C. 2710.05(A)(5), (9).

{¶ 16} The parties did not sign a written agreement at or following the mediation conference in this matter. The city has not argued that any of the nine exceptions listed in R.C. 2710.05(A) apply. According to the city, an exception codified in subsection (B)(2) of R.C. 2710.05 allows disclosure and admissibility of the mediation communications it desires.

{¶ 17} Application of the (B)(2) exception requires the trial court to make three determinations: (1) that the evidence is not otherwise available, (2) that the disclosure is necessary to prevent a manifest injustice, and (3) that the information is sought in "a proceeding to prove a claim to rescind or reform or a defense to avoid liability on a contract arising out of the mediation." R.C. 2710.05(B)(2). There is no indication in the record that the trial court considered the first two requirements. In regard to the final requirement, Carter has correctly argued that the exception under (B)(2) does not apply because the city did not seek the mediation communications "in a proceeding to prove a claim to rescind or reform" a contract arising out of mediation nor did it seek them "in a proceeding to prove * * * a defense to avoid liability on a contract arising out of the mediation." Id. The city sought the information in an effort to prove that an oral contract of settlement arose out of the mediation in order to persuade the trial court to enforce that claimed oral contract against Carter. Therefore, the trial court incorrectly applied R.C. 2710.05(B)(2). Because there is no dispute that the information sought is otherwise covered by R.C. 2710.03(A), the information is privileged and is neither discoverable nor admissible. Carter's first assignment of error is sustained.

## LAWYER DISQUALIFICATION

{¶ 18} Carter's second assignment of error is that the trial court incorrectly disqualified his lawyers under the Ohio Rules of Professional Conduct without conducting an evidentiary hearing and determining whether any of the exceptions to disqualification under Prof.Cond.R. 3.7 applied. An order disqualifying a party's chosen lawyer in a civil action is a final, appealable order under R.C. 2505.02. *Russell v. Mercy Hosp.* (1984), 15 Ohio St.3d 37, 15 OBR 136, 472 N.E.2d 695, syllabus. Therefore, this court has jurisdiction to consider the trial court's disqualification of Carter's lawyers.

{¶ 19} The trial court sua sponte ordered both of Carter's lawyers disqualified under Prof.Cond.R. 1.7 and 3.7 because it found that the lawyers "will be called to testify at the [h]earing on the City of Akron's [m]otion to [e]nforce [s]ettlement." If a lawyer may have to serve as both advocate and witness, a trial court may sua sponte raise the issue of disqualification under the ethical rules governing lawyers. *Puritas Metal Prods. Inc. v. Cole,* 9th Dist. Nos. 07CA009255, 07CA009257, and 07CA009259, 2008-Ohio-4653, 2008 WL 4193934, at ¶ 25. Disqualification of a party's chosen lawyer, however, is a "drastic measure [that] courts should hesitate to impose except when absolutely necessary." Id. at ¶ 28, quoting *Kala v. Aluminum Smelting & Refining Co.* (1998), 81 Ohio St.3d 1, 6, 688 N.E.2d 258. Disqualification is absolutely necessary only if "real harm is likely to result from failing to [disqualify]." Id.

{¶ 20} Under Prof.Cond.R. 3.7, "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness" unless one of the exceptions stated in the rule applies. In order to determine whether a lawyer is likely to be a necessary witness, the trial court must first determine that the proposed testimony is material and relevant to the issues being litigated and that the evidence is unobtainable elsewhere. *Puritas Metal Prods.* at ¶ 39. "Testimony may be relevant and even highly useful but still not strictly necessary. A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony and availability of other evidence. * * * A party's mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony." Id. at ¶ 34, quoting *Mettler v. Mettler* (2007), 50 Conn.Supp. 357, 928 A.2d 631, 633.

{¶ 21} In this case, the trial court disqualified Carter's lawyers before they could be called by the city as witnesses at the hearing on the city's motion to enforce a settlement agreement. By its plain language, Prof.Cond.R. 3.7 forbids a lawyer from acting as an advocate "at a trial" in which he is likely to be a necessary witness. The rule does not address whether a lawyer may act as an

advocate at a motion hearing in which he is likely to be called as a necessary witness. In any event, there is no indication in the record that the trial court considered whether Carter's lawyers met the "necessary witness" test. The trial court determined only that Carter's lawyers "will be called to testify." A party's stated intention to call his opponent's lawyer to testify is an insufficient basis for disqualification of a litigant's chosen lawyer under Prof.Cond.R. 3.7. *Puritas Metal Prods.*, 2008-Ohio-4653, 2008 WL 4193934, at ¶ 34, quoting *Mettler v. Mettler*, 928 A.2d at 633. Furthermore, there is no indication that the trial court determined that real harm was likely to result from the lawyers' continued representation of Carter in this matter. Id. at ¶ 28. To the extent that it addressed his lawyers' disqualification under Prof.Cond.R. 3.7, Carter's second assignment of error is sustained.

{¶ 22} In disqualifying the lawyers, the trial court also relied on Prof.Cond.R. 1.7. Under the rule regulating conflicts of interest with current clients, a lawyer may be required to discontinue representing a client if "there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by * * * the lawyer's own personal interests." (Emphasis sic.) Prof.Cond.R. 1.7(a)(2). Depending on the circumstances, a lawyer's personal interest in testifying truthfully when called to do so under oath could create a conflict of interest with his client. There is no indication that the trial court considered whether the lawyers testifying at the motion hearing in this matter would create "a substantial risk" of "materially limit[ing]" their ability to appropriately represent Carter's interests. Id. Therefore, to the extent that Carter's second assignment of error relates to his lawyers' disqualification under Prof.Cond.R. 1.7, it is sustained.

## CONCLUSION

{¶ 23} Carter's first assignment of error is sustained because the information the city sought is privileged under Ohio's Uniform Mediation Act and the trial court incorrectly held that the exception under R.C. 2710.05(B)(2) applied. The second assignment of error is also sustained. The trial court incorrectly disqualified Carter's lawyers without considering whether they satisfied the test for necessary witnesses under Prof.Cond.R. 3.7 or whether their testimony would create a conflict of interest under Prof.Cond.R. 1.7. The judgment of the Summit County Common Pleas Court, Probate Division, is reversed, and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed.

BELFANCE, J., concurs.

MOORE, J., concurs in judgment only.